The plaintiff, Ponton, alleges that on the 9th day of February, 1869, he had a homestead in his lands and an exemption of personal property allotted and laid off to him, according to the provisions of the act of August, 1868, which allotment embraced all of his lands and all of his personal property. That he continued in possession of this property, undisturbed, until 24th day of April, 1873, when the defendant McAdoo, served him with a warrant, returnable on the next day at Greensboro, in the said county of Guilford, for $36.81; that he was in his field at work when the officer served the warrant, and there remained for some time when the other defendant, Scott, came up, who was met by the officer, and the two had a long talk with each other; that after their conversation the officer and Scott came to where he was, and the officer showed him an execution, issued that day by the Clerk of the Superior Court of said county, on a judgment obtained in said Court of the defendant, McAdoo, the 22d day of July, 1869, which was against him, the plaintiff, and the other defendant, Scott, and one Bevil, for $219.17, with interest on $140, and costs; that this judgment had (102) been paid off by the defendant, Scott, as he had been informed, and assigned by McAdoo, the plaintiff therein, to one Benjamin Scott, (since dead) in order that the same might be kept alive for the benefit of David Scott, the defendant. Payment of this execution was then demanded of the plaintiff, the defendant, Scott, at the same time telling him that "the homestead had gone up," and if he did not pay him or secure him in said execution he would sell him out in ten days; that it was then demanded which of the horses then plowing in the field was his property, and on being told, it was threatened to take them off unless he would give security for the forthcoming of the same next day at Greensboro, which was given.
He and his son carried the horses to Greensboro, when they were invited to the defendant, McAdoo's, store, where a mortgage was drawn *Page 92 
up for the security of the two debts, in which were conveyed to McAdoo all the plaintiff's land and other property, with a power to sell the same in six months. Plaintiff alleges that he executed and delivered this deed in the full confidence of the truth of the statement that the homestead had gone up, as was represented to him, and under the perplexity, confusion and surprise created by the statement, enforced by the presence of an officer, with the threat of sale, etc.; that the mortgage was not signed by the plaintiff's wife, and that the property was the same that had been set apart and allotted to him.
The defendants in their several answers allege that they were honestly under the impression that the homestead in regard to old debts was inoperative; that they used no undue influence with the plaintiff to make him execute the mortgage, and that he did it freely, of his own consent.
Upon coming in of the answers, the defendants moved to dissolve the injunction, which his Honor refused, and the defendants appealed.
(103) I. The plaintiff had no legal homestead. Battle's Revisal, p. 467, Chap. 55, Secs. 4, 2, 8, 13; Smith v. Hunt, 68 N.C. 482.
II. The mortgage to defendants, in the absence of fraud, is good as against the plaintiff, Ponton, by estoppel, if not against his wife, for the homestead.
III. It is good to pass the personal property without the wife joining in the mortgage. State Con., Art. X, Sec. 8. It is good also against the husband for the reversionary estate in the land.
IV. There is no fraud, duress or collusion alleged, sufficient, if the facts stated and alleged in the complaint are taken to be true, to authorize the Court to decree a remission or surrender of the deed. Hunt v.Bass, 17 N.C. 292, (295); Gunter v. Thomas, 36 N.C. 199, (207).
V. This is, then, an action for an injunction simply, and can be heard and decided upon affidavits.
VI. His Honor below ought to have dissolved the injunction so far as the personal property is concerned, and let it be sold.
Grounds of injunction are two-fold:
1. For that the mortgage conveyed land and personal property which had been laid off and assigned to Ponton as an exemption, under act of Assembly. Special Session in August, 1868, to which the wife of Ponton was not a party. *Page 93 
2. For that the mortgage was obtained under a mistake of law and fact, attended by circumstances of surprise. Threat of sale of his property, levy on it and demand of forthcoming bond, which created great confusion and perplexity of mind in Ponton — defendants acting in concert.
I. Homestead and personal property exemption were laid off and assigned, according to act of special session, 1868, and lists were made and registered, as by that act directed. Acts special session 1868, Chap. 43.
(a) It is submitted that this protected Ponton's real and (104) personal property exemptions from execution, and his wife so far acquired an interest in the realty, if not in the personalty, that the husband could not mortgage it without the joinder and privy examination of his wife. Const., Art. X, Sec. 8; Mayo v. Cotten, 69 N.C. 289; Flege v.Garvey, 1 Amer. Law Times, (new series,) p. 20.
II. It is submitted that the personalty exempted to the husband is within the humane policy of the Constitution, and although alienable by the husband, it extends in spirit also to the wife and children, and a deed conveying it away under circumstances of surprise and imposition, as in this case, ought not to be maintained.
(a) A deed or other act done under a naked mistake of the law, if not otherwise objectionable, will generally be held valid and obligatory. 1 Story's Eq., Sec. 116; Adams' Eq., p. 191, (mar.)
(b) There are exceptions, however, to this general rule, e.g., a deed executed under a mistake of the law with other ingredients going to showmisrepresentation, imposition, sudden false information from defendants, calculated to mislead and confuse, and executed under surprise and perplexity of mind, may be set aside as improvidently obtained. 1 Story's Eq., Secs. 119, 120, and note to last section. Adams' Eq., 191, (mar. page.)
(c) Cases of surprise, mixed with mistake of law, stand on a ground peculiar to themselves and independent of the general doctrine; in such cases, deeds like the one in question, are regarded as unadvised and improvident, and are held invalid on the principle of protecting those who cannot protect themselves, and on the ground that such acts are not in accordance with the intention of the parties. 1 Story's Eq., Sec. 134.
In our case deed was made in mistake of the law as to validity of exemptions against old debts, as decided in Hill v. Kessler, 63 N.C. 437, and it was executed immediately after the decision of Gunn v.Barry, and before the decision of Garrett v. Cheshire, 69 N.C. 296, and it was done on the sudden application of defendants (105) acting in concert, accompanied with threats to sell plaintiff out *Page 94 
in 10 days, by a levy on his property, demand of forthcoming bond, requirement to produce horses at Greensboro next morning, and immediate procurement of mortgage at counting room of one of the defendants, while plaintiff continued in state of perplexity and confusion. See complaint, and defendants' affidavits substantially admit the same.
(d) Injunction here is to protect and keep the property in specie, pending the litigation, and is of the nature of a special injunction, and in such cases the rule is not to dissolve, on the coming in of the answer, if in the opinion of the Court it is reasonably necessary to protect the property until the trial. Heilig v. Stokes, 63 N.C. 612; Jarman v.Saunders, 64 N.C. 368.
(e) On a motion to dissolve injunction, when a fund is taken into the custody of the law, the rule is that the Court will not let go, if plaintiff shows probable cause, from which it may be reasonably inferred that he will be able to make out his case at the final hearing. Craycroffv. Morehead, 67 N.C. 422; Brown v. Hawkins, 65 N.C. 645.
It is therefore respectfully submitted that the Judge below committed no error in continuing the injunction to the hearing.
The application being for a special injunction and the property incustodia legis, the Court will not let go the property and allow the same to be sold, if there is a probability that the merits are with the plaintiff, notwithstanding the denial in the answer. But here there is no denial in the answer, the material facts are admitted. Heilig v. Stokes,63 N.C. 612; Jarman v. Saunders, 64 N.C. 368; Craycroff v. Morehead,67 N.C. 422; Brown v. Hawkins, 65 N.C. 645.
 Upon this ground therefore, we sustain the ruling of his Honor in refusing to dissolve the injunction.
(106) It may be premature to say, and yet it may shorten litigation, that it is manifest that the mortgage was given under a mistake both of law and fact. It was a mutual mistake of both parties, in producing which the defendant Scott was the active agent. It was a mistake which no amount of diligence or caution on the part of the plaintiff could have avoided; for as alleged by defendant, it was a mistake both of law and fact, common to business men, lawyers and Judges. This makes a clear case for relief. 1 Story's Eq., Secs. 119, 120, and note; Adams' Eq., 191; 1 Story's Eq., Secs. 29, 134.
The well prepared brief of plaintiff's counsel, has made our task an easy one.
There is no error. This will be certified to the end, etc.
PER CURIAM. Judgment affirmed. *Page 95 
 Cited: Bruff v. Stern, 81 N.C. 188; Morris v. Willard, 84 N.C. 296;Levenson v. Elson, 88 N.C. 184.