BENTON, Assignee, etc., *v.* ALLEN and others.

*(Circuit Court, D. New Hampshire.  May, 1880.)*

BANKRUPTCY—ASSIGNEE—ACTION BY, TO VACATE CONVEYANCE.—In an action by an assignee in bankruptcy to vacate a conveyance made by the bankrupt as being in fraud of creditors, the burden of proof is upon him to prove such fraud clearly and decisively.

SAME—SAME—SAME—SUFFICIENCY OF EVIDENCE.—Evidence in this case *held* insufficient, as against the sworn answers of defendants, to show a conveyance made by a bankrupt to have been in fraud of creditors.

ACTION TO VACATE CONVEYANCE—RELIEF DENIED.—Prayer that one of defendants be required to pay amount of a certain note to complainant as assignee, and that the other defendant be required to surrender the same to complainant, denied; it appearing that the holder of such note was dead, and the maker thereof had a valid set-off to the same, and it had been adjusted between the parties.

SAME—PARTIES.—In an action by an assignee in bankruptcy to set aside a conveyance made by the bankrupt upon the ground the same is fraudulent as to creditors, the bankrupt is not a proper party.

In Equity.

*H. Heywood and H. S. Clark*, for complainants.

*Ray, Drew & Heywood*, for defendants.

CLARK, D. J.  On the seventeenth day of October, 1873, Horatio N. Allen was seized of certain lots of land in the town of Stratford, in the county of Coos, in the state of New Hampshire.

On that day, by deed of warranty, he conveyed these lots of land to Willis Wilder, of Bethlehem, in the state of New Hampshire, and Richard H. Wilder, of Guildhall, in the state

of Vermont, for the sum of $3,000, and the taxes due and unpaid thereon.

In payment of his undivided half of said lands Willis Wilder "turned out" to Allen two notes, one against the Waumbeck Lumber Company, and one against John Pierce, Jr., both amounting to about $1,200, and his own note for the balance of the $1,500, all of which, within two or three months thereafter, were paid to said Allen.

For payment of his half of said lands Richard H. Wilder gave his individual note of $1,500, which has never been paid. The taxes have been paid by the grantees, or one of them.

On the ninth day of January, 1875, Richard H. Wilder quitclaimed his interest in said lands to Willis Wilder, and in payment took his note of $1,500 and interest from the seventeenth of October, 1873, the date of the original purchase of the lands from Allen.

On the twelfth day of January, 1875, Allen filed his petition in bankruptcy in the United States district court for the district of Vermont, and the complainant was appointed his assignee; and on the twenty-fifth day of May, 1875, he filed his bill of complaint against Allen, the bankrupt, and the two Wilders, alleging that said conveyance by Allen of the lots of land in Stratford, October 17, 1873, was made to hinder, delay and defraud the creditors of said Allen, and was void as against the complainant and said creditors, and praying that said conveyance may be decreed to be null and void, and the said Wilders enjoined from ever claiming any right, title, or interest in said real estate, by virtue of said deed of the seventeenth of October, 1873.

The bill also prays that, if said deed is not held null and void, the said Willis Wilder be ordered and decreed to pay the complainants the amount of the note given by him to Richard H. Wilder, and that said Richard be ordered to surrender said note to the said complainant.

To this bill the defendants have filed their several answers, each denying, under oath, distinctly and positively, that said conveyance was made to hinder, delay, or defraud creditors, and alleging that it was made in good faith.

These allegations on the one side and denials on the other present the issue in the case, and it is one of fact, chiefly, if not entirely.

Was, then, this conveyance of October 17, 1873, of the lots in Stratford, made to hinder, delay, or defraud creditors, or was it not?

If it was, under the provisions of section 5046, page 981, of the United States Revised Statutes, the complainant would be entitled to recover the land, as against these respondents, and to have the conveyance set aside and decreed null.

But if the conveyance was not made for such a purpose on the part of either of said respondents, or was not made for such a purpose on the part of the Wilders, and they had no knowledge of such a purpose on the part of Allen, and there was nothing to put them on an inquiry as to such a purpose, and the trade by them was made in good faith, then the conveyance must stand.

On this issue the burden of proof is on the complainant. He must prove the fraud which he alleges, and make his proof so strong as to overcome the answers which have been made, under oath, by the respondents.

This, we think, he has failed to do. He has produced many witnesses, but much of the testimony is very remote from the case, and some entirely immaterial.

We have, however, considered the whole of it carefully, and have endeavored to give it its proper weight; but upon the whole evidence, on the one side and the other, we do not find that the conveyance was made to hinder, delay, or defraud creditors, by either Allen or the Wilders, or that there was anything connected with the transaction which should have put the Wilders on inquiry.

Allen desired to sell the land because it had been unprofitable to him, and the Wilders bought it for the younger to take off the lumber. As to the other prayer of the bill, that Willis Wilder be ordered and decreed to pay to the complainant the amount of the note given by him to Richard H. Wilder for his half of the land, and that Richard be ordered to surrender said note to the complainant, it cannot be granted

for two reasons, especially, without referring to any other—
*First,* the evidence shows that at the time Willis Wilder gave
this note to Richard H. he held notes against Richard, which
he had a right to have set off against this note, so long as
this note should remain in the hands of Richard, and which
were so set off and adjusted by the parties; *second,* because
Richard is now dead, and no decree can be made against him,
and no executor or administrator of his has come in and
been made a party to this proceeding.

· The bill is dismissed with costs—one bill to the Wilders,
and another and distinct bill to Allen, because it is difficult
to see why he was made a party to this proceeding.

The assignee has all his property rights and credits, and a
right to recover all property conveyed by him in fraud of his
creditors.    He might have been used as witness without
making him a party.

A decree of nullity against the two Wilders would, by oper-
ation of law, vest the estate in these lands in the assignee
without any decree of nullity of the deed as against the bank-
rupt.

He should not be brought into court without reason, and
dismissed without pay.